**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOHN SARANCHUK,** *et al.* | : |
| **Plaintiffs** | : **CIVIL ACTION NO. 3:15-893** |
| | : |
| v. | : **(JUDGE MANNION)** |
| | : |
| **DAN LELLO,** *et al.* | : |
| **Defendants** | : |

## MEMORANDUM

Pending before the court is the defendants' motion for reconsideration. (Doc. 37). Based upon the court's review of the motion and related materials, the defendants' motion will be **GRANTED**.

**I.  BACKGROUND**

This case involves a group of former police officers, the plaintiffs, who were employed by the defendants, the Dupont Borough Police Department (the "Police Department") and other local officials within the Dupont Borough, until their work hours were reduced and eventually eliminated from the Police Department's work schedule. (Doc. 1).

When named plaintiff John Saranchuk began working for the Dupont Borough Police Department (the "Police Department") in 2006, he worked on

an hourly basis and did not initially sign any contract dictating the number of hours he would be assigned to work each week. (Doc. 32; Doc. 34). Saranchuk was eventually promoted to the rank of sergeant and began working up to forty hours per week, but he received no benefits and was still considered an hourly employee of the Dupont Borough. (Doc. 32). In March 2011, Saranchuk was named the Police Department's "Officer in Charge," which is the functional equivalent of a Chief of Police within the Dupont Borough. (*Id.*).

During Saranchuk's term as Officer in Charge, a group of police officers working at the Police Department was organized to strengthen their ability to bargain collectively with the Dupont Borough. (Doc. 1; Doc. 14). This group was known as the Dupont Borough Police Officers Association (the "Police Association"), and ultimately, it was able to negotiate the terms of a collective bargaining agreement, which was effective for a term lasting from January 1, 2013 through December 31, 2016. (Doc. 1; Doc. 14).

Following the Police Association's formation, a great deal of bad blood and mistrust began to develop between members of the Police Association and leadership figures at the Dupont Borough. (Doc. 1; Doc. 14; Doc. 32; Doc. 34). On August 7, 2014, named defendant Sean Murray was appointed as the new Officer in Charge of the Police Department. (Doc. 32; Doc. 34). A

Luzerne County Detective then contacted Saranchuk and told him to refrain from coming into work until further notice. (Doc. 1; Doc. 14; Doc. 32, Exh. A). On that same evening, the locks on Saranchuk's office were changed, barring his access to the premises. (Doc. 33, Exh. D). Thereafter, Saranchuk was officially terminated from his employment with the Police Department, and he never again returned to work there. (Doc. 1; Doc. 14; Doc. 32; Doc. 34).

While the plaintiffs allege that Saranchuk was fired in retaliation for engaging in protected union activities through the Police Association, the defendants counter this assertion, arguing that Saranchuk had in fact lost the confidence of the District Attorney and the Dupont Borough leadership over the course of several incidents involving a lack of professionalism, frequent miscommunications, and poor police practices. (Doc. 1; Doc. 32, Exh. B). The Dupont Borough's exact motivations for removing Saranchuk from the Police Department's work schedule remain in dispute.

Other named plaintiffs affiliated with the Police Association were also affected by this rapid personnel change within the Police Department, seeing their work hours gradually reduced and eventually eliminated from the Police Department's work schedule. (Doc. 1; Doc. 14; Doc. 32; Doc. 34). At the same time, the Dupont Borough began hiring new police officers to fill the resulting vacancies in the work schedule. (Doc. 1; Doc. 14). The plaintiffs perceived

these work reductions as arbitrary disciplinary actions with no sound basis, but the defendants asserted that these work reductions were in fact due to specified instances of misconduct by the plaintiffs. (Doc. 1; Doc. 14). The plaintiffs further alleged that they were threatened, harassed, and defamed throughout the course of their dealings with the defendants. (Doc. 1; Doc. 34). The defendants patently denied this, asserting that any purported hostile interactions or harsh exchanges with the plaintiffs stemmed from genuine concerns over their fitness as police officers. (Doc. 14; Doc. 32).

On May 5, 2015, the plaintiffs filed the instant action, bringing a broad range of federal and state claims for relief: Count I for violations of the Due Process Clause "under 42 U.S.C. §1983 and the Fifth, Sixth, and Fourteenth Amendments;" Count II for "civil rights conspiracy to deprive the plaintiffs [of their] federally-protected rights under 42 U.S.C. §§1985-1986 and the Fifth, Sixth, and Fourteenth Amendments;" Count III for "Equal Protection" Clause violations under 42 U.S.C. §1983 and the Fourteenth Amendment; Count IV for "*Monell* liability" under 42 U.S.C. §1983; Count V for "civil conspiracy;" Count VI for "intentional infliction of emotional distress;" Count VII for breach of the "implied covenants of good faith and fair dealing;" Counts VIII and IX for "intentional interference with advantageous relations;" Count X for "abuse of process;" Count XI for "defamation;" and Count XII for "loss of consortium."

(Doc. 1). On July 20, 2015, the defendants filed their answer to the alleged claims for relief. (Doc. 14). The parties thereafter engaged in fact discovery, and on February 13, 2017, the defendants moved for summary judgment as to all counts in the plaintiffs' complaint. (Doc. 30; Doc. 31). On March 15, 2017, after the plaintiffs had filed their brief in opposition to the defendants' summary judgment motion, the defendants filed their reply brief. (Doc. 33; Doc. 35).

By Memorandum and Order dated October 13, 2017, the court granted the defendants' motion for summary judgment with respect to all counts in the plaintiffs' complaint, except for the procedural due process claim alleged in Count I and the *Monell* liability claim alleged in Count IV. (Doc. 36; Doc. 37). A substantial part of the court's analysis on the procedural due process claim was based on the fact that the aforementioned collective bargaining agreement, which was referenced numerous times throughout the parties briefs, could not be located as part of the evidentiary record. (Doc. 36). Specifically, the court noted that "[r]ather than offering the agreement's substantive terms in their entirety as evidentiary support, both parties instead rely on contradictory allegations regarding what the collective bargaining agreement purports to do." (*Id.*). As a result, the court denied summary judgment as to the procedural due process claim, stating that "[t]his dispute of material fact about the collective bargaining agreement's precise contours and

protections . . . precludes summary judgment on the plaintiffs' procedural due process claims." (*Id.*). Similarly, the court denied summary judgment as to the *Monell* liability claim because the defendants, as the moving party, had not demonstrated the absence of a factual dispute on the issue of whether the Dupont Borough had "knowledge of" and "acquiescence to" underlying constitutional violations against the plaintiffs. (*Id.*).

The defendants now request reconsideration of these determinations, arguing that the collective bargaining agreement was, in fact, available for the court's review the entire time. (Doc. 38). The court will explore the merits of this assertion herein, as this matter has been fully briefed and is now ripe for adjudication.

## II. RECONSIDERATION STANDARD

A motion for reconsideration may be used only to seek remediation of "manifest errors of law or fact or to present newly discovered evidence" that, if known previously, might have affected the court's decision. *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). "Accordingly, a judgment may be altered or amended if the party seeking

reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Id.* (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

A motion for reconsideration may be "appropriate in instances where, for example, the [c]ourt has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning but of apprehension." *York Int'l Corp. v. Liberty Mut. Ins. Co.*, 140 F. Supp. 3d 357, 360-61 (M.D. Pa. 2015) (quoting *Rohrbach v. AT&T Nassau Metals Corp.*, 902 F. Supp. 523, 527 (M.D. Pa. 1995)). It should not, however, "be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the [c]ourt and the litigant." *Id.* (citing *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002)). "Reconsideration of a judgment is an extraordinary remedy, and courts should grant such motions sparingly." *Id.* (quoting *D'Angio v. Borough of Nescopeck*, 56 F. Supp. 2d 502, 504 (M.D. Pa. 1999)). A motion for reconsideration "will not be granted merely because a party is dissatisfied with the court's ruling,

nor will a court consider repetitive arguments that were previously asserted and considered." *Frazier v. SCI Med. Dispensary Doctor + 2 Staff Members*, 2009 WL 136724, at *2 (M.D. Pa. Jan. 16, 2009) (citing *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995)).

**III.  DISCUSSION**

**A. The Collective Bargaining Agreement's Location within the Evidentiary Record**

The defendants' instant motion focuses on the court's finding during summary judgment that the collective bargaining agreement was not provided as part of the evidentiary record. (Doc. 36). The defendants' assertion that the collective bargaining agreement was properly attached as part of the evidentiary record this entire time, however, is questionable at best. (Doc. 39). The missing collective bargaining agreement, the defendants point out, was appended to the bottom of their reply brief, which was filed more than a month after their summary judgment motion was filed. (Doc. 35). Every other document submitted by the defendants in support of their motion for summary judgment was attached to their statement of material facts, which was filed contemporaneously with the summary judgment motion as prescribed by the

Local Rules of Court for the Middle District of Pennsylvania. (Doc. 32). The precise reason why the collective bargaining agreement, a pivotal piece of evidence at summary judgment, was originally omitted and later tacked onto a reply brief remains unknown.

The defendants, now moving for reconsideration of the court's previously entered Order, (Doc. 37), state that they "assume . . . this oversight was a result of the voluminous documents and exhibits that were submitted by the parties in support of their positions." (Doc. 39). In fact, however, the collective bargaining agreement was not initially considered because the defendants offered it for the court's consideration in a procedurally erroneous manner that was clearly inconsistent with the Local Rules. The Local Rule titled "Exhibits and Other Documents Substantiating Motions," for instance, indicates that "[w]hen allegations of fact are relied upon in support of a motion, all pertinent affidavits, transcripts, and other documents *must be filed simultaneously with the motion.*" Local Rule 7.3 (emphasis added). Each evidentiary document filed by the defendants, except for the critical collective bargaining agreement, comports with this rule. (Doc. 32; Doc. 35).

In a similar vein, the Local Rule titled "Reply Briefs" notes that "[a] brief *in reply to matters argued in a brief in opposition* may be filed by the moving party within fourteen . . . days after service of the brief in opposition." Local

Rule 7.7 (emphasis added). A reply brief in federal litigation serves the very specific purpose of permitting a motion's proponent to respond to arguments raised by the motion's opponent in the brief in opposition. "[R]eply briefs are [thus] limited in scope to matters either raised by the opposition or unforeseen at the time of the original motion." *Karlo v. Pittsburgh Glass Works, LLC*, 880 F. Supp. 2d 629, 642 (W.D. Pa. 2012). Reply briefs are not, however, vehicles for raising new arguments or presenting new evidence. The defendants here used their reply brief for precisely such a purpose, as the collective bargaining agreement appended to the reply brief was neither raised by the opposition nor unforeseen at the time of the original motion. (Doc. 35, Exh. A). To the contrary, it was central to the defendants' arguments on summary judgment. Rather than simply adhering to the Local Rules, the defendants instead tacked one of their most important pieces of evidence onto the end of a document with a very limited scope and purpose. (Doc. 35). The Third Circuit has emphasized that "[j]udges are not like pigs hunting for truffles buried in the record." *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006). Litigants must assist the court in maintaining the evidentiary record in a tidy and streamlined manner to avoid unnecessary errors of communication such as that at issue here.

The Local Rule titled "Suspension of Rules" notes that "[t]he court *may* suspend these rules in individual cases." Local Rule 1.3 (emphasis added). Having underscored the importance of adhering to the procedural requirements of the Local Rules and having noted the hassles that might have been avoided here, the court nonetheless finds it appropriate at this juncture to construe the defendants' violation of the Local Rules as an honest oversight and to consider the collective bargaining agreement as part of the overall evidentiary record for the purpose of evaluating the present case on its merits. In this narrow circumstance, where the moving party attached evidence upon which their summary judgment motion relied in the improper location, while certain difficulties could have been avoided, the issue amounts to little more than a miscommunication between the court and a party to the dispute.

The court is thus persuaded that the instant motion for reconsideration is not merely a futile attempt to "relitigate a point of disagreement between the [c]ourt and the litigant." *York Int'l Corp.*, 140 F. Supp. 3d at 360. Instead, it is an invitation to "prevent manifest injustice" by "correct[ing] a clear error of law" that was made due to the presentation of evidence "that was not available when the court granted the motion for summary judgment." *Max's Seafood Cafe*, 176 F.3d at 677. An initial review of the collective bargaining agreement at issue here indicates that a suspension of the Local Rules for the purpose of

considering this fundamental piece of evidence will allow the court to determine whether the plaintiffs' remaining claims warrant resolution as a matter of law.

### B. The Collective Bargaining Agreement's Substantive Merits as to the Plaintiffs' Procedural Due Process Claim

A procedural due process analysis involves a two-step inquiry: (1) whether the plaintiff was deprived of an interest that is encompassed by the Fourteenth Amendment's protection of "life, liberty, and property," and (2) whether the procedures given to the plaintiff comport with all constitutional requirements such that they amounted to "due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)); *Mariano v. Borough of Dickson City*, 40 F. Supp. 3d 411, 421 (M.D. Pa. 2014). To have a property interest in a job, "a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Whether a legitimate entitlement, and therefore a property interest, exists is a question of state law. *See, e.g.*, *Kelly v. Borough*

*of Sayreville*, 107 F.3d 1073, 1077 (3d Cir. 1997) (noting that "[s]tate law creates the property rights protected by the Fourteenth Amendment").

The court must first determine whether the plaintiffs had a protected property interest in their continued employment. The plaintiffs argue that their property interest is derived from the collective bargaining agreement at issue, which was renewed and extended for a new term by Saranchuk and the Police Association. (Doc. 1; Doc. 33; Doc. 34). The defendants respond by arguing that the collective bargaining agreement in fact classifies the plaintiffs as hourly employees with no protected property interest of which to speak. (Doc. 31; Doc. 32). The Third Circuit has previously relied on a Pennsylvania state statute in determining that members of a borough "police force" generally do have a protected property interest in their employment. *See Dee v. Borough of Dunmore*, 549 F.3d 225, 230-31 (3d Cir. 2008) (relying on 8 PA. CONS. STAT. §1190). The definitions section of this same statute, however, specifically excludes "police serving . . . on an hourly or daily basis" from the general definition of "police force." 8 PA. CONS. STAT. §1170. As a result, borough police officers who work on a full-time or salaried basis have a protected property interest in their employment, while those working on a part-time, hourly, or daily basis do not. *See Mariano v. Borough of Dickson City*, 2014 WL 5795679, at *5 (M.D. Pa. Nov. 6, 2014); *Stevens v. Telford Borough*,

2014 WL 4056952, at *2 (E.D. Pa. Aug. 14, 2014); *Rosati v. Borough of Hellertown*, 1992 WL 396769, at *3 (E.D. Pa. Dec. 24, 1992). State statutory law, therefore, does not confer a property interest upon the plaintiffs here.

The plaintiffs' only other potential source of a protected property interest would be the collective bargaining agreement that was negotiated by the Police Association. (Doc. 1; Doc. 14). Importantly, however, it is the precise terms of a collective bargaining agreement that can confer a property interest, not the agreement's mere existence alone. *See, e.g.*, *Wilson v. MVM, Inc.*, 475 F.3d 166, 177 (3d Cir. 2007) (citing *Kelly*, 107 F.3d at 1077). The collective bargaining agreement at issue here states that "[f]ull-time [p]olice [o]fficer[s]" are "[t]hose [o]fficers [who] are regularly scheduled for forty . . . or more hours per week." (Doc. 39, Exh. A). "Part-time [p]olice [o]fficer[s]," on the other hand, are defined as "[t]hose [o]fficers [who] are regularly scheduled [for] less than forty . . . hours per week." (*Id.*).

The evidence of record here indicates that the plaintiffs were never "regularly scheduled for forty . . . or more hours per week." (*Id.*). While Saranchuk sometimes worked "up to forty hours per week," nothing in the record demonstrates that he did so with any regularity such that it would comport with the definition of "full-time" set forth in the collective bargaining agreement. (Doc. 32). Similarly, the plaintiffs themselves admit in their

statement of material facts that the other police officers affiliated with the Police Association ordinarily worked no more than thirty-two hours per week. (Doc. 34). Here too, none of the plaintiffs meet the mutually agreed-upon threshold for classification as "full-time" employees. (Doc. 39, Exh. A). As a result, the collective bargaining agreement does not confer upon the plaintiffs any protected property interest sufficient to sustain their due process claim.

The defendants correctly point out that the collective bargaining agreement's "past practices" clause does not alter this result. (Doc. 39). This portion of the collective bargaining agreement states that "[a]ll existing benefits and practices previously enjoyed by the members of the [b]argaining [u]nit and the [Dupont] Borough, *not modified by this agreement*, shall remain [as is] and shall remain in effect for the duration of this [a]greement." (Doc. 39, Exh. A) (emphasis added). This "past practices" clause therefore applies to matters that, unlike the threshold for qualification as a full-time employee, are not addressed by the collective bargaining agreement. (*Id.*). Since the conditions outlining what amounts to full-time employment versus part-time employment were expressly modified by the collective bargaining agreement, any past practices on that subject are wholly irrelevant here. To the extent that any past practices on this topic existed prior to the enactment of the collective bargaining agreement, they were altered by plain terms of the collective

bargaining agreement. Without any protected property interest of which to speak, the court need not undertake an inquiry into the adequacy of the procedures that were provided to the plaintiffs.

In light of the fact that the plaintiffs in this case possess no property interest protected by the Constitution, there is no basis for sustaining their procedural due process claim. Consequently, the defendants' motion for reconsideration as to the procedural due process claim will be granted, and summary judgment as to that claim will be entered in the defendants' favor.

**C. The Plaintiffs' Sole Remaining Claim for *Monell* Liability**

Upon granting reconsideration to the defendants as to the procedural due process claims, the plaintiffs' sole remaining claim is predicated on the framework articulated in *Monell v. New York City Department of Social Services*. Municipalities, like individuals, can be found liable for §1983 claims. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). However, a municipality may not be found liable under a theory of *respondeat superior* solely because it employs a culpable defendant. Rather, the plaintiff "must identify a policy or custom" leading to the alleged constitutional violation "and specify exactly what the policy or custom was." *McTernan v. City of York*,

564 F.3d 636, 658 (3d Cir. 2009) (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008)).

"*Monell* liability," however, "also requires an underlying constitutional violation." *M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 43 F. Supp. 3d 412, 420 (M.D. Pa. 2014). The plaintiff must allege that "through its deliberate conduct, the municipality was the moving force behind the [constitutional] injury." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). "[A] municipality may not incur *Monell* liability as a result of the actions of its officers when its officers have inflicted no constitutional injury." *Marable v. West Pottsgrove Twp.*, 176 F. App'x 275, 283 (3d Cir. 2006).

Here, the plaintiffs have no viable constitutional claims remaining upon which *Monell* liability may attach. Because a *Monell* claim is directly contingent upon an underlying constitutional claim, the plaintiffs' final pending claim fails as a matter of law. Thus, reconsideration of this claim will be granted, and summary judgment will be entered in favor of the defendants.

## IV. CONCLUSION

For the foregoing reasons, the defendants' motion for reconsideration will be **GRANTED**. An appropriate order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION
United States District Judge**

**Dated: August 23, 2018**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-893-02.docx